In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00038-CR
______________________________


SHAWN LADELL JOHNSON, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 03-0275X


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Shawn Ladell Johnson pled guilty to delivery of cocaine as charged in the
indictment. See Tex. Health & Safety Code Ann. Â§Â 481.102(3)(D) (Vernon Supp.
2004â2005), Â§Â 481.112(a) (Vernon 2003). Because the amount of cocaine alleged to have
been delivered was greater than four grams, but less than 200 grams, the charged offense
was a first degree felony. See Tex. Health & Safety Code Ann. Â§ 481.112(d) (Vernon
2003). There was no plea agreement in the case, and Johnson asked that a jury be
empaneled to assess his punishment. The jury assessed punishment at fifty years'
imprisonment. The trial court sentenced Johnson in accordance with that jury verdict. It
is from this judgment that Johnson now appeals. 
Â Â Â Â Â Â Â Â Â Â On August 16, 2004, Johnson's appellate counsel filed an Anders


 brief in which he
professionally discussed the record, described the issues reviewed, and concluded there
were no arguable grounds for appeal and, as required by Anders, also filed a motion to
withdraw. Counsel also sent Johnson a copy of the appellate brief and informed Johnson
of his right to file a response pro se and right to review the record. This Court informed
Johnson at that time his response, if any, was due by September 15, 2004. We later
granted Johnson's request for an extension, extending the due date for his responsive brief
to October 21, 2004. As of this date, Johnson has not filed a response pro se. 
Â Â Â Â Â Â Â Â Â Â We have independently reviewed the record and the brief filed by counsel in this
appeal, and we agree there is no reversible error in this case. Johnson admitted his guilt
to the offense, as charged in the indictment. The record before us supports the trial court's
finding that Johnson's plea was entered knowingly, intelligently, and voluntarily. 
Â Â Â Â Â Â Â Â Â Â It is well established that in felony cases a plea of guilty before the jury admits the
existence of all elements necessary to establish guilt and, in such cases, the introduction
of evidence by the state is only to enable the jury to intelligently exercise the discretion the
law vests in it to determine punishment. Addicks v. State, 15 S.W.3d 608, 612 (Tex.
App.âHouston [14th Dist.] 2000, pet. ref'd); see also Holland v. State, 761 S.W.2d 307,
312 (Tex. Crim. App. 1988); Williams v. State, 674 S.W.2d 315, 318, 319 n.3 (Tex. Crim.
App. 1984) (noting that no evidence need be entered when appellant pleads guilty before
jury; evidence is necessary for guilty plea before court only). In such cases, the plea of
guilty is conclusive as to the defendant's guilt, and there is no question of the sufficiency
of the evidence on appeal. See ExÂ parte Martin, 747 S.W.2d 789, 792 (Tex. Crim. App.
1988); see also Stahle v. State, 970 S.W.2d 682, 688 (Tex. App.âDallas 1998, pet. ref'd). 
Â Â Â Â Â Â Â Â Â Â In addition, the jury had Johnson's judicial confession which, by itself, is factually
and legally sufficient to support the jury's finding of guilt in this case. See Dinnery v. State,
592 S.W.2d 343, 353 (Tex. Crim. App. [Panel Op.] 1979). His confession was also
supported by testimony from Deputy Mike Couch of the Harrison County Sheriff's
Department, a videotape of the drug transaction, and Johnson's own testimony. We
therefore find the evidence legally and factually sufficient to support the trial court's
judgment.
Â Â Â Â Â Â Â Â Â Â Johnson's offense carried a punishment range of not less than five years'
imprisonment or more than ninety-nine years or life. See Tex. Health & Safety Code Ann.
Â§ 481.112(d). The punishment assessed is within the range provided for by statute. 
Accordingly, the record before us does not suggest any error in the sentence imposed.
Â Â Â Â Â Â Â Â Â Â The record also would not support a claim of ineffective assistance of counsel. To
prevail on a claim of ineffective assistance of counsel, an appellant must show both that
his or her counsel's performance fell below professional norms and also that counsel's
performance prejudiced the appellant's defense. Bone v. State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002). "This means that the appellant must show a reasonable probability that,
but for his counsel's unprofessional errors, the result of the proceeding would have been
different." Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The record
suggests appellant's trial counsel pursued a strategy of trying to humanize the appellant
while lessening the severity of his crimes in the jurors' eyes. While the jury ultimately sided
with the State's sentencing recommendation of fifty years, on the record before us, we
cannot say counsel's trial strategy was unsound or fell below professional norms. 
Therefore, the record does not establish the necessary proof under the first prong of a
claim for ineffective assistance. 
Â Â Â Â Â Â Â Â Â Â One final issue, however, does cause concern. In its closing argument, the State
made the following remarks to the jury:
Â Â Â Â Â Â Â Â Â Â The other thing she [the trial court, speaking through its jury charge]
tells you [the jury] is, he [Johnson] will only have to serve one-fourth of
whatever is imposed, plus good time credit. So, if he is getting one day of
good time for every one day he serves, the most he will ever have to serve
even on a life sentence is fifteen years and if he gets good time, one for one,
seven and a half [years].
Â 
(Emphasis added.) Later on, the State continued:
I don't think he [Johnson] told 100% of the truth upon the stand; but, give him
credit on that [pleading guilty] if you wish. Don't set his sentence down there
somewhere where it says no big deal. He is going to get out in two or three
and we are going to be back in the same boat we are now. 
Â 
(Emphasis added.) 
Â Â Â Â Â Â Â Â Â Â The state's closing argument should be limited to four issues: (1) summation of the
evidence, (2) reasonable deductions from the evidence, (3) responses to the argument of
opposing counsel, and (4) pleas for law enforcement. Helleson v. State, 5 S.W.3d 393,
396 (Tex. App.âFort Worth 1999, pet. ref'd). While the state may explain the parole law's
existence, the state must avoid applying the parole law specifically to the defendant on
trial. Taylor v. State, 911 S.W.2d 906, 911 (Tex. App.âFort Worth 1995, pet. ref'd). In this
case, the emphasized portions of the State's closing argument clearly show the State was
trying to show the jury how the parole law might be applied to Johnson's case. Such
argument is patently impermissible.
Â Â Â Â Â Â Â Â Â Â Johnson did not object to the State's argument; thus, the error has not been
preserved for appellate review.


 See Helleson, 5 S.W.3d at 396 (to preserve erroneous
jury argument, appellant must object, request instruction to disregard, and move for
mistrial). Even had Johnson objected to the argument, however, we do not believe the
error would have required reversal. The harm resulting from an improper jury argument
may generally be cured by a trial court's instruction to disregard. Id. In this case, the trial
court instructed the jury,
Â Â Â Â Â Â Â Â Â Â It cannot accurately be predicted how the parole law and good
conduct time might be applied to this defendant if he is sentenced to a term
of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.
Â 
Â Â Â Â Â Â Â Â Â Â You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are not
to consider the manner in which the parole law may be applied to this
particular defendant.
Â 
(Emphasis added.) The trial court expressly instructed the jury not to consider how the
parole law might be applied in Johnson's case. There is nothing in the record before us
suggesting the jury did not follow the trial court's instruction. Accordingly, we must
conclude the emphasized portion of the trial court's jury charge cured the State's improper
remarks. Cf. id. at 398.
Â Â Â Â Â Â Â Â Â Â For the reasons stated, we affirm the trial court's judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice


Date Submitted:Â Â Â Â Â Â December 9, 2004
Date Decided:Â Â Â Â Â Â Â Â Â December 10, 2004

Do Not Publish



;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpFirst, li.MsoFootnoteTextCxSpFirst, div.MsoFootnoteTextCxSpFirst
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpMiddle, li.MsoFootnoteTextCxSpMiddle, div.MsoFootnoteTextCxSpMiddle
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpLast, li.MsoFootnoteTextCxSpLast, div.MsoFootnoteTextCxSpLast
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-225-CR%20Robinson%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-09-00225-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TIMOTHY LEE ROBINSON,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 276th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Titus County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. CR16,079

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Is it reasonable to conclude
that a driver must display a signal of an intention to proceed through the
intersection of Ninth Street and Margaret Drive in Mount Pleasant?Â  This question becomes important in
considering the conviction of Timothy Lee Robinson for possession of more than
200 grams of cocaine.Â  His punishment was
enhanced by a prior felony conviction, and the jury assessed punishment at
twenty yearsÂ imprisonment.Â  Robinson
raises four issues on appeal.[1]Â  Although we conclude the trial court did not
abuse its discretion in denying RobinsonÂs motion to suppress evidence and
conclude the evidence is sufficient, we also find the trial court erred in
failing to instruct the jury pursuant to Article 38.23 of the Texas Code of
Criminal Procedure.Â  Finding the error
resulted in harm, we reverse the conviction and remand to the trial court for a
new trial.Â  

I. Â Â Â Â Â Â Â  Facts

Â 

Â Â Â Â Â Â Â Â Â Â Â  Officer Cesar MuÃ±oz, a police officer
with the Mount Pleasant Police Department, testified he received an anonymous call at 6:00 a.m.Â  The caller advised MuÃ±oz that Robinson was Âheaded
from Dallas, Texas, back to Mount Pleasant with a large amount of cocaine.ÂÂ  The caller stated he believed Robinson was Âheaded
back to his residence, which, at the time, [the police officers] knew to be 511
Margaret Drive.ÂÂ  MuÃ±oz observed a
vehicle being driven by Robinson make a turn at the intersection of Ninth
Street and Margaret Drive without signaling.Â 
When MuÃ±oz activated his
overhead lights, Robinson failed to immediately stop and proceeded several
blocks along Margaret Drive to his residence.Â 
The odor of marihuana was emanating from the car.Â  The police requested and obtained
consent to search the car and found
residual amounts of marihuana and a hollowed-out cigar in the car. Â After searching the car, the police
found 294.64 grams of cocaine in a gallon-size plastic bag under the car near
the passenger side.Â  Robinson claimed possession of the drugs at
the scene and later signed a written confession.Â  

Â Â Â Â Â Â Â Â Â Â Â  Robinson filed a motion to
suppress evidence alleging the police officer lacked reasonable suspicion to
detain him.Â  After a hearing, the trial
court denied the motion to suppress.Â 
Robinson requested, during the charge conference at trial, that the
trial court reconsider its ruling on the motion to suppress and requested the
jury be instructed pursuant to Article 38.23 of the Texas Code of Criminal
Procedure.Â  See Tex. Code Crim. Proc.
Ann. art. 38.23 (Vernon 2005).Â 
The trial court denied the renewed motion to suppress and denied the
requested jury instruction.Â  A jury found
Robinson guilty and assessed a punishment of twenty yearsÂ imprisonment.Â Â Â Â  

II.Â Â Â Â Â Â Â  The Trial
Court Did Not Abuse Its Discretion in Denying the Motion to Suppress

Â 

Â Â Â Â Â Â Â Â Â Â Â  Robinson argues, in his first point
of error, that the trial court abused its discretion in denying his motion to
suppress.Â  According to Robinson, the
trial court erred in concluding MuÃ±oz observed Robinson commit a traffic
violation. Â Robinson argues he was not
required to signal at the intersection of Ninth Street and Margaret Drive
because Ninth Street merges into Margaret Drive.

Â Â Â Â Â Â Â Â Â Â Â  We review the trial courtÂs decision
on a motion to suppress evidence by applying a bifurcated standard of review
deferring to the trial courtÂs determination of historical facts that depend on
credibility, but review de novo the trial courtÂs application of the law. Â Wiede v. State, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); see Guzman v.
State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).Â  The trial courtÂs
evidentiary ruling Âwill be upheld on appeal if it is correct on any theory of
law that finds support in the record.Â Â Gonzalez
v. State, 195 S.W.3d 114,
126 (Tex. Crim. App. 2006); see Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Â Generally, we review de novo determinations of
probable cause or reasonable suspicion after granting deference to the trial
courtÂs determination of historical facts. Â Guzman, 955 S.W.2d at 87; see
Crain v. State, 315 S.W.3d 43, 49 (Tex.
Crim. App. 2010).

Â Â Â Â Â Â Â Â Â Â Â  The defendant alleging a Fourth
Amendment violation bears the burden of producing some evidence that rebuts the
presumption of proper police conduct. Â Amador
v. State, 221 S.W.3d 666,
672 (Tex. Crim. App. 2007). Â ÂA defendant
meets his initial burden of proof by establishing that a search or seizure
occurred without a warrant.Â Â Id. Â The burden then shifts to the State to prove
that the search or seizure was nonetheless reasonable under the totality of the
circumstances. Â Id. at 672Â73.

Â Â Â Â Â Â Â Â Â Â Â  A law enforcement officer may
lawfully stop and detain a person for a traffic violation committed in the
presence of the officer.Â  Garcia v.
State, 827 S.W.2d 937, 944
(Tex. Crim. App. 1992); Zervos v. State, 15 S.W.3d 146, 151 (Tex. App.ÂTexarkana 2000, pet. refÂd).Â  ÂA routine traffic stop resembles an
investigative detention.ÂÂ  State v.
Cardenas, 36 S.W.3d 243,
246 (Tex. App.ÂHouston [1st Dist.] 2001, pet. refÂd).Â  The United States Supreme Court in Terry
v. Ohio established the test for investigative detentions.Â  Terry established a two-pronged test
for investigative detentions.Â  Terry
v. Ohio, 392 U.S. 1, 19Â20
(1968).Â  To determine the reasonableness
of an investigative detention, the court must inquire: Â Â(1) whether the officerÂs action was justified
at its inception; and, (2) whether it was reasonably related in scope to the
circumstances which justified the interference in the first place.ÂÂ  Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); see Terry, 392 U.S. at 19Â20.
Â Â Â Â Â Â Â Â Â Â Â  Robinson only
challenges the first prong of the test.Â  ÂUnder
the first prong, Âthe police officer must be able to point to specific and
articulable facts which, taken together with rational inferences from those
facts, reasonably warrant that intrusion.ÂÂÂ 
Id. (quoting Terry, 392 U.S. at 21).Â  These facts must be more than a mere hunch or
suspicion.Â  Id. at 244.Â  Whether the officerÂs suspicion was
reasonable is evaluated based on Âan objective standard that disregards any
subjective intent of the officer making the stop and looks solely to whether an
objective basis for the stop exists.ÂÂ  Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005).Â  The specific,
articulable facts, along with rational inferences from those facts, must allow
the officer to reasonably conclude the person detained actually is, has been,
or soon will be engaged in criminal activity.Â 
United States v. Sokolow,
490 U.S. 1, 10 (1989).Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  The Texas Court of Criminal Appeals
has noted the State Âneed not establish with absolute certainty that a crime
has occurred in order to show reasonable suspicion.ÂÂ  Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).Â  The court, however, cautioned that appellate
courts should not defer to a police officerÂs legal conclusions.Â  Id.
at 531.Â  Since Garcia, several Texas courts of appeals have noted an officerÂs incorrect
understanding of the law does not give rise to a reasonable
suspicion.Â  Fowler v. State, 266
S.W.3d 498 (Tex. App.ÂFort Worth 2008, pet. refÂd); Goudeau v. State, 209 S.W.3d 713, 716 (Tex. App.ÂHouston [14th
Dist.] 2006, no pet.); see United States
v. Miller, 146 F.3d 274, 279 (5th Cir. 1998).Â  The Third Circuit has explained this
distinction succinctly as follows:

[M]istakes
of fact are rarely fatal to an officerÂs reasonable, articulable belief that an
individual was violating a traffic ordinance at the time of a stop, many of our
sister circuits have held that mistakes of law -- even reasonable ones -- can
render a traffic stop ÂunreasonableÂ under the Fourth Amendment.

Â 

United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006).Â 
We believe the Third CircuitÂs holding explains the distinction made by
the Texas Court of Criminal Appeals in Garcia.Â  See Madden v. State, 242 S.W.3d 504,
508 n.7 (Tex. Crim. App. 2007) (noting factual issue was not whether defendant
was actually speeding, but whether officer had reasonable belief defendant was
speeding).Â  Based on the facts presented,
does a correct interpretation of the law allow a police officer to reasonably
conclude that Robinson had committed a criminal act?Â  

Â Â Â Â Â Â Â Â Â Â Â  Officer MuÃ±oz
testified, at the hearing on the motion to suppress, he observed the vehicle
Robinson was driving Âfailed to make a -- use their turn signal at that time
when it turned onto Margaret from Ninth.ÂÂ 
The Texas Transportation Code provides Â[a]n operator shall use the signal authorized by
Section 545.106 to indicate an intention to turn, change lanes, or start from a
parked position.ÂÂ  Tex. Transp. Code Ann. Â§ 545.104(a)
(Vernon 1999).Â  Section 545.103 provides Â[a]n
operator may not turn the vehicle to enter a private road or driveway,
otherwise turn the vehicle from a direct course, or move right or left on a
roadway unless movement can be made safely.ÂÂ 
Tex. Transp. Code Ann. Â§
545.103 (Vernon 1999). Â The disputed
issue in this case is whether Robinson made a turn.[2]

Â Â Â Â Â Â Â Â Â Â Â  The Texas Court of
Criminal Appeals has recently clarified what constitutes a turn under the Texas
Transportation Code.Â  The Texas Court of
Criminal Appeals held: Â Â[u]nder the
plain language of the Transportation Code, all movements right or left on the
roadway must be made safely, but only some--turns, lane changes, or starts from
a parked position--require a signal.ÂÂ  Mahaffey v. State, 316 S.W.3d 633, 643
(Tex. Crim. App. 2010).Â  In Mahaffey, the Texas Court of Criminal
Appeals concluded that the defendantÂs movement from right to left as two lanes
merged did not require the defendant to use a turn signal.Â  Id.Â  Noting the Texas Transportation Code does not
define the word Âturn,Â the court concluded the definition of ÂturnÂ does not
include movements to the right or left which are Âsimply following the Âdirect
courseÂ of the road and of the traffic on that winding road.ÂÂ  Id.
at 638Â39.Â  It is only when an operator Âturns
right or left out of the Âdirect courseÂ of the road that he must signal his
intention.ÂÂ  Id. at 639.Â  

Â Â Â Â Â Â Â Â Â Â Â  We note Mahaffey was decided after the trial in
this case.Â  The defense, however, relied
upon the Beaumont Court of AppealsÂ decision in Trahan v. State, 16 S.W.3d 146, 147 (Tex. App.ÂBeaumont 2000, no
pet.), at trial.Â  Similar to Mahaffey, the Beaumont court held Âthe code does not equate moving
right or left to a Âturn.ÂÂÂ  Id. (concluding defendant not required
to signal exit from freeway).Â  The State,
citing Mahaffey, 316 S.W.3d at 643,
notes Âthe Court of Criminal Appeals has approved of [TrahanÂs reasoning] to a limited extent, not applicable here.ÂÂ  Other than explaining Mahaffey as Âholding that a ÂmergeÂ is not a ÂturnÂ that requires a
signal under the Transportation Code,Â the State does not explain why the
reasoning of Mahaffey is not
applicable.Â  Although the facts of Mahaffey are distinguishable, the
clarification of the meaning of the term ÂturnÂ is applicable to the facts of
this case.Â  

Â Â Â Â Â Â Â Â Â Â Â  The State argues Robinson was
required to signal a turn because the alleged traffic violation occurred at an
intersection.Â  The Texas Transportation
Code defines an intersection as Âthe common area at the junction of two
highways, other than the junction of an alley and a highway.ÂÂ  Tex.
Transp. Code Ann. Â§ 541.303 (Vernon 1999).Â  Robinson argues neither Ninth Street nor
Margaret Drive qualify as a highway.Â  The
Texas Transportation Code defines a Âhighway or streetÂ as Âthe width between
the boundary lines of a publicly maintained way any part of which is open to
the public for vehicular travelÂ and defines ÂalleyÂ as Âa street that:Â  (A)Â is
not used primarily for through traffic; andÂ (B)Â provides access to
rear entrances of buildings or lots along a street.ÂÂ  Tex.
Transp. Code Ann. Â§
541.302 (Vernon 1999).Â  Because the
record establishes both Ninth Street and Margaret Drive are streets primarily
used for vehicular travel and do not provide access to the rear entrances of
buildings or lots, the junction of Ninth Street and Margaret Drive qualifies as
an intersection.

Â Â Â Â Â Â Â Â Â Â Â  The fact that the alleged traffic
violation occurred at the junction of Ninth Street and Margaret Drive, however,
is not determinative.Â  Section 545.101
only requires an operator of a vehicle to signal if he or she is making a
turn.Â  If the operator is proceeding
straight, or following the direct course of the road, a signal is not
required.Â  The fact that the street name
of the road may change is not necessarily determinative of whether an operator
is following the direct course of the road.Â 
It is the course of the road and traffic that are determinative.Â  The Texas Transportation Code does not
require an operator proceeding straight through an intersection to signal.[3]Â  When a road curves, Mahaffey explains that an operator following the direct course of
the road is not required to signal.Â  Mahaffey, 316 S.W.3d at 639.Â  The issue is whether the traffic of Ninth
Street merges onto Margaret or whether the traffic from Ninth Street turns onto Margaret.

Â Â Â Â Â Â Â Â Â Â Â  Officer MuÃ±ozÂs testimony can be
interpreted as opining that traffic on Ninth Street does not merge onto
Margaret.Â  MuÃ±oz described the
intersection of Ninth and Margaret as follows: 

Where the
road actually Ys, there is a dead end road to the left, but it is a roadway
with residences on it, and thereÂs the road to the right, which Margaret
continues onto.Â  Mr. Robinson approached
Margaret and failed to turn -- failed to use a turn signal to indicate whether
he was turning to the right or to the left at that intersection.Â  

Â 

At the suppression hearing, the defense showed MuÃ±oz a map, which MuÃ±oz
described as incorrect.Â  When asked, Â[D]oes
Ninth Street curve into Margaret Drive?ÂÂ 
MuÃ±oz responded, ÂYes, it does, but the way that indicates is incorrect
to the actual way the street is.Â  ThatÂs
incorrect.ÂÂ  MuÃ±oz admitted there were
not any traffic signs at the intersection, but testified, Â[Ninth Street] doesnÂt
continue onto Margaret though there is an intersection.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  At trial,[4]
MuÃ±oz testified Robinson failed to signal a turn at the intersection of Ninth
and Margaret in Mount Pleasant, Texas.Â 
MuÃ±oz admitted East Ninth Street and Margaret Drive merge at their intersection.Â  When asked whether there were any traffic
signs of any kind at the intersection, MuÃ±oz responded, ÂI donÂt believe. Â ItÂs just a -- itÂs an intersection.ÂÂ Â Â  

Â Â Â Â Â Â Â Â Â Â Â  The record also contains evidence
that the traffic from Ninth Street does merge onto Margaret Drive.Â  The defense introduced a map which suggests
Ninth Street merges with Margaret Drive.Â 
The defense exhibit appears to be photocopied from a commercial atlas.Â  MuÃ±oz testified the map, introduced by the defense
and admitted into evidence, was incorrect.[5]Â  According to MuÃ±oz, the defense exhibit was
incorrect Â[b]ecause in [the defense exhibit], East Eighth does not run into
Margaret, and then youÂve got East Ninth, and they run parallel to each other.ÂÂ  Lakeshia Williams, RobinsonÂs girlfriend,
described the intersection on redirect examination as follows:

QÂ Â Â Â Â Â Â Â  [Defense
Counsel]Â Â Â  Is there a traffic sign of
any kind to your recollection at the intersection - - or what Detective MuÃ±oz
considers to be the intersection of Ninth and Margaret?

Â 

AÂ Â Â Â Â Â Â Â  [Williams]Â Â Â  No, sir.Â 
ItÂs just a curve.

Â 

QÂ Â Â Â Â Â Â Â  Ninth Street curves into Margaret?

Â 

AÂ Â Â Â Â Â Â Â  Yes, sir.

Â 

QÂ Â Â Â Â Â Â Â  Are there some houses on the left as
youÂre turning onto Margaret?

Â 

AÂ Â Â Â Â Â Â Â  Yes,
sir.Â  It goes like this.Â  If you turn left, you have to put a signal
on.Â  You turn right, you just going
around the corner.

Â 

QÂ Â Â Â Â Â Â Â  So itÂs a dead end if you go left, is
that right?

Â 

AÂ Â Â Â Â Â Â Â  ItÂs a dead end if you go left, and
then go up that way if you donÂt turn off.

Â 

QÂ Â Â Â Â Â Â Â  But ninth just curves around?

Â 

AÂ Â Â Â Â Â Â Â  Just curves around.

Â 

QÂ Â Â Â Â Â Â Â  ThereÂs no stop sign or yield sign?

Â 

AÂ Â Â Â Â Â Â Â  No, sir.

Â 

On
recross-examination, Williams admitted she was not a certified police officer
and disclaimed being Âfully knowledgeable on all the traffic offenses.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  The relevant inquiry is not
RobinsonÂs guilt or innocence of a violation of the Texas Transportation Code,
but the reasonableness of the officerÂs suspicion that Robinson had violated
it. Â See Madden, 242 S.W.3d at 508
n.7 (noting factual issue not whether defendant was actually speeding, but
whether officer had reasonable belief defendant was speeding).Â  The trial court could have determined, based
on MuÃ±ozÂs testimony, that a reasonable officer would have reasonably, even if
mistakenly, believed a turn signal was required because either (1) Robinson turned
out of the Âdirect courseÂ of the road, or (2) there was no Âdirect courseÂ of
the road at the intersection of Ninth Street and Margaret Drive. Â While the record contains strong evidence that
Ninth Street and Margaret Drive merged and that Robinson merely followed the
direct course of the road, the evidence does not conclusively establish a
reasonable officer would have concluded Ninth Street and Margaret Drive merged
and Robinson merely followed the direct course of the road.[6]Â  We are required to afford Âalmost total
deference to a trial courtÂs determination of the historical facts.ÂÂ  Guzman,
955 S.W.2d at 89.Â  We are unable to
conclude the trial court erred in denying RobinsonÂs motion to suppress. 

III.Â  Â Â  The
Evidence Is Sufficient 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Robinson
argues, in his fourth point of error, the evidence is insufficient because
there are insufficient affirmative links.Â 
When contraband is not found on the accusedÂs person or in the exclusive
possession of the accused, the evidence must affirmatively link[7]
the accused to the contraband. Â Jones
v. State, 963 S.W.2d 826, 830 (Tex. App.ÂTexarkana 1998, pet. refÂd).Â  Robinson argues the evidence merely
established he was in the general vicinity of the contraband.Â  According to Robinson, he confessed Âsimply
to keep his brother and brotherÂs girlfriend out of trouble.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  The
defendantÂs mere presence at the location where drugs are found is
insufficient, by itself, to establish actual care, custody, or control of those
drugs.Â  Evans, 202 S.W.3d at 162.Â  ÂThe
Âaffirmative links ruleÂ is designed to protect the innocent bystander from
conviction based solely upon his fortuitous proximity to someone elseÂs drugs.ÂÂ  Poindexter
v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).Â  Under the affirmative links rule, Âwhen the
accused is not in exclusive possession of the place where the substance is
found, it cannot be concluded that the accused had knowledge of and control
over the contraband unless there are additional independent facts and
circumstances which affirmatively link the accused to the contraband.ÂÂ  Id.
(quoting Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).Â  The following is a
nonexclusive list of factors that have been found to be sufficient, either
singly or in combination, to establish a personÂs possession of contraband: 

(1)
the defendantÂs presence when a search is conducted; (2) whether the contraband
was in plain view; (3) whether the contraband was in close proximity to, or
accessible by, the defendant; (4) whether the place where the contraband was
found was enclosed; (5) whether the defendant was under the influence of
narcotics when arrested; (6) whether the defendant possessed other contraband
or narcotics when arrested; (7) whether the defendant made incriminating
statements when arrested; (8) whether the defendant attempted to flee; (9)
whether the defendant made furtive gestures; (10) whether there was an odor of
contraband present at the scene; (11) whether other contraband or drug
paraphernalia were present; (12)Â whether the defendant owned or had a
right to possess the place where the contraband was found; (13) whether the
defendant was found with a large amount of cash; (14) whether the defendant
possessed weapons; and (15)Â whether conduct of the defendant indicated a
consciousness of guilt. 

Â 

Evans, 202 S.W.3d at 162 n.12; Hargrove v. State,
211 S.W.3d 379, 385Â86 (Tex. App.ÂSan Antonio 2006, pet. refÂd); see Jones,
963 S.W.2d at 830.Â  

Â Â Â Â Â Â Â Â Â Â Â  The State
presented evidence tending to link Robinson to the contraband.Â  The contraband was found on the ground at
RobinsonÂs residence.Â  Robinson had been
operating the vehicle under which the contraband was discovered.[8]Â  The police had received an anonymous tip that
Robinson would be traveling back to his residence with a large quantity of
drugs.Â  Robinson did not immediately stop
when MuÃ±oz activated his overhead
lights.Â  When Robinson eventually stopped
the car, he exited the vehicle and moved toward the house until commanded to
stop by the police.Â  After the police
discovered the contraband, Robinson orally confessed and later signed a written
confession.Â  

Â Â Â Â Â Â Â Â Â Â Â  The links to
the contraband do not need to exclude every other reasonable hypothesis except
the defendantÂs guilt.Â  Brown v. State,
911 S.W.2d 744, 748 (Tex. Crim. App. 1995). Â ÂThe number of factors present is not
as important as the degree to which the factors tend to affirmatively link the
accused to the contraband.Â Â Williams
v. State, 906 S.W.2d 58, 65 (Tex. App.ÂTyler 1995, pet. refÂd).Â  The record in this case is sufficient to link
Robinson to the contraband.Â  RobinsonÂs
fourth point of error is overruled.

Â 

Â 

Â 

IV.Â Â Â Â Â Â  The Trial Court Erred in Refusing to
Instruct the Jury Concerning Article 38.23

Â 

Â Â Â Â Â Â Â Â Â Â Â  RobinsonÂs
remaining issue challenges the trial courtÂs refusal to instruct the jury
pursuant to Article 38.23 of the Texas Code of Criminal Procedure.Â  See
Tex. Code Crim. Proc. Ann. art.
38.23.Â  Defense counsel objected to the
charge and submitted a requested special instruction in writing to the trial
court.Â  According to Robinson, a fact
issue exists concerning whether Robinson
had committed a traffic offense.Â  

Â Â Â Â Â Â Â Â Â Â Â  The Texas
Code of Criminal Procedure requires a jury instruction if the evidence raises
an issue concerning whether evidence is the result of an unlawful search. Â Article 38.23(a) provides: 

No evidence
obtained by an officer or other person in violation of any provisions of the
Constitution or laws of the State of Texas, or of the Constitution or laws of
the United States of America, shall be admitted in evidence against the accused
on the trial of any criminal case.


In any case where the legal evidence raises an issue hereunder, the jury shall
be instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such
event, the jury shall disregard any such evidence so obtained.

Â 

Id. Â An instruction
pursuant to Article 38.23 is mandatory when there is a factual dispute
regarding the legality of the search.Â  Pickens
v. State, 165 S.W.3d 675,
680 (Tex. Crim. App. 2005); Brooks v. State, 642 S.W.2d 791, 799 (Tex. Crim. App. [Panel Op.] 1982); Malone
v. State, 163 S.W.3d 785,
802 (Tex. App.ÂTexarkana 2005, pet. refÂd).Â 
To be entitled to the submission of a jury instruction under Article
38.23(a), a defendant must establish: 

Â 

(1)Â Â Â Â Â Â Â  The
evidence heard by the jury must raise an issue of fact;Â  

(2)Â Â Â Â Â Â Â  The
evidence on that fact must be affirmatively contested; and 

(3)Â Â Â Â Â Â Â  That contested factual issue must be
material to the lawfulness of the challenged conduct in obtaining the evidence.


Â 

Madden, 242 S.W.3d
at 510 (citations omitted).Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  In this case, a fact issue existed concerning
whether a reasonable officer would have concluded RobinsonÂs movement deviated
from the direct course of the road and of the traffic.Â  The record contains evidence that at
the intersection at issue, Ninth Street and Margaret Drive are
indistinguishable from a single road except for the assigned names.Â  The
map introduced by the defense strongly suggests Robinson followed the direct
course of traffic on Ninth Street merging onto Margaret Drive.Â  Although MuÃ±oz challenged the defense exhibit
as incorrect, he did not testify, at trial, that the exhibit was incorrect
concerning the intersection of Ninth Street and Margaret Drive.Â  At trial,[9]
MuÃ±oz merely challenged the accuracy of the exhibit as it related to the depiction
of Eighth Street.Â  WilliamsÂ testimony
can be interpreted as evidence that traffic on Ninth Street merges onto
Margaret Drive.Â  

Â Â Â Â Â Â Â Â Â Â Â  We emphasize the
disputed issue of historical fact is not RobinsonÂs guilt or innocence of a
violation of the Texas Transportation Code, but the reasonableness of the
officerÂs suspicion that Robinson had violated it.Â  In Madden, the Texas Court of Criminal
Appeals approved of the following instruction: 

Â 

You are instructed that no evidence obtained
by an officer or other person in violation of any provisions of the
Constitution or laws of the State of Texas, or of the Constitution or laws of
the United States of America, shall be admitted in evidence against the accused
on the trial of any criminal case.

Â 

You are further instructed that our law
permits the stop and detention of a motorist by a peace officer without a
warrant when the officer has reasonable suspicion to believe that a traffic
offense has been committed.

Â 

By the term Âreasonable suspicion,Â as used
herein, is meant specific articulable facts which, when taken together with
rational inferences from those facts, would warrant a man of reasonable caution
to believe that an offense has been or is being committed. Â Speeding is an offense against the law.

Â 

Therefore, bearing in mind these
instructions, if you find from the evidence that, on the occasion in question,
[the police officer] did not have a reasonable suspicion to believe that
[Appellant] was driving at a speed greater than 55 miles per hour on a portion
of the highway with a posted speed limit of 55 miles per hour immediately prior
to the stop, or if you have a reasonable doubt thereof, you will disregard any
and all evidence obtained as a result of [AppellantÂs] detention by the officer
and you will not consider such evidence for any purpose whatsoever.

Â 

However, if you find from the evidence that,
on the occasion in question, [the police officer] did have a reasonable
suspicion to believe that [Appellant] was driving at a speed greater than 55
miles per hour on a portion of the highway with a posted speed limit of 55
miles per hour immediately prior to the stop, then you may consider the
evidence obtained by the officer as a result of the detention. 

Â 

Id. at 508 n.7.

Â 

Â Â Â Â Â Â Â Â Â Â Â  The instruction focuses the jury on
the disputed issue of fact within the context of the relevant legal
background.Â  The Texas Court of Criminal
Appeals described this instruction as 

admirable
in that it specifically directs the juryÂs attention to the one historical
fact--[the police officer]Âs reasonable belief or ÂsuspicionÂ that appellant
was going faster than 55 m.p.h.--in dispute and tells the jury to decide this
fact. Â The factual issue for the jury is
not whether appellant was speeding, the issue is whether [the police officer]
had a reasonable belief that he was speeding. Â Even police officers may be mistaken about an
historical fact such as Âspeeding,Â as long as that mistake was not
unreasonable. Â Of course, evidence that
appellant was not, in fact, speeding is highly probative of whether [the police
officer] was reasonable in thinking that he was speeding. Â The trial courtÂs instructions correctly set
out the proper factual issue for the jury to decide. Â The rest of the instruction simply gives the
legal background for the issue and explains why this is such an important fact
to decide.

Â 

Id.Â  Thus, the disputed issue of historical fact
is not whether a traffic violation occurred, but whether the officer had a
reasonable suspicion to believe that Robinson failed to give a signal to turn
out of the direct course of traffic. Â Because
there is a fact issue on reasonableness of the officerÂs suspicion Robinson had
violated the Texas Transportation Code, in this respect Robinson has met the
first prong to be entitled to the submission of a jury instruction.

Â Â Â Â Â Â Â Â Â Â Â  The factual
dispute required to trigger an Article 38.23(a) instruction can be raised Âonly by affirmative evidence, not by
mere cross-examination questions or argument.Â Â Oursbourn v. State,
259 S.W.3d 159, 177 (Tex. Crim. App. 2008).Â 
The testimony of Williams provides affirmative evidence that Ninth
Street merges onto Margaret Drive.Â  The
second prong has been met.

Â Â Â Â Â Â Â Â Â Â Â  Additionally,
the contested factual issue must be material to the lawfulness of the
challenged conduct in obtaining the evidence.Â 
ÂThe defendant must offer evidence that, if credited, would create a
reasonable doubt as to a specific factual matter essential to the voluntariness
of the statement.ÂÂ  Id.Â  MuÃ±ozÂs sole justification for the detention was that he had observed
Robinson commit a traffic offense by failing to signal a turn.Â  If Ninth Street and Margaret Drive merged,
Robinson was not required to signal the turn.Â 
Under this scenario, the act observed by MuÃ±oz was not a traffic offense
and MuÃ±oz may not have been reasonable in believing that Robinson committed a
traffic violation.Â  Reasonable suspicion
existed only if an officer would have reasonably, even if mistakenly,
believed Ninth Street did not merge with Margaret Drive.Â  The
contested factual issue is clearly material to the lawfulness of the
detention.Â  Robinson was entitled to a
jury instruction on Article 38.23.Â  The
trial court erred in denying RobinsonÂs request for a jury instruction pursuant
to Article 38.23. 

Â Â Â Â Â Â Â Â Â Â Â  When error
occurs in failing to properly instruct the jury, our review of the charge is
under the Almanza standard. Â Almanza
v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1984) (op. on rehÂg). Â An erroneous or incomplete jury charge does
not result in automatic reversal of the conviction or punishment. Â Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Instead, the
appellate court Âmust determine whether sufficient harm resulted from the error
to require reversal.ÂÂ  Id. at 731Â32;
Almanza, 686 S.W.2d at
171.Â  The level of harm an appellant must
demonstrate as having resulted from the erroneous jury instruction depends on
whether the appellant properly objected to the error at trial.Â  Abdnor, 871 S.W.2d at 732.Â  When
the appellant properly objected at trial, reversal is required if the error is Âcalculated
to injure the rights of defendantÂÂthe appellant need only demonstrate Âsome
harmÂ on appeal.Â  Id.; see also
Almanza, 686 S.W.2d at 171.
Â If the error was not preserved, reversal
is not required unless Âthe error is so egregious
and created such harm that he Âhas not had a fair and impartial trialÂÂin short
Âegregious harm.ÂÂ Almanza, 686 S.W.2d at 171; see Rudd v.
State, 921 S.W.2d 370, 373
(Tex. App.ÂTexarkana 1996, pet. refÂd).Â  ÂEgregious
harmÂ consists of errors affecting the very basis of the case or that deprive
the defendant of a valuable right, vitally affect a defensive theory, or make
the case for conviction or punishment clearly and significantly more
persuasive. Â Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim.
App. 1991); Boones v. State,
170 S.W.3d 653, 660 (Tex. App.ÂTexarkana 2005, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  As noted
above, Robinson objected to the charge and provided the trial court with a
written proposed charge.Â  RobinsonÂs
proposed jury instruction explained the circumstances when a signal was
required and then asked the jury to determine whether Robinson Âwas required to
use a turn signalÂ at the intersection.Â 
That instruction was incorrect as it directed the jury to consider the
wrong question:Â  whether the intersection
required a signal, rather than whether the officer could have reasonably
believed it did.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
point of this instruction is to determine the admissibility of the evidence
found as a result of the search of the vehicle, not whether Robinson was guilty
of failing to give a turn signal.Â 
Theoretically, Robinson could be not guilty of the traffic offense, but
the evidence found as a result of the search might still be admissible if the
officer has reasonable suspicion that the facts he observed constituted a
traffic offense.Â  The historical fact
upon which Robinson was entitled to an instruction was whether an officer would
have reasonably, even if mistakenly, believed Ninth Street did not merge with
Margaret Drive.Â  Â 

Â Â Â Â Â Â Â Â Â Â Â  When
a defendant fails to present a proper requested instruction, any error in the
charge Âshould be reviewed only for Âegregious harmÂ under Almanza.ÂÂ  Madden, 242 S.W.3d at 513; see Oursbourn,
259 S.W.3d at 181 (trial court must instruct jury on voluntariness of defendantÂs
statement when fact issue raised).Â Â  

Â Â Â Â Â Â Â Â Â Â Â  We
conclude Robinson has demonstrated egregious harm.Â  The configuration of this intersection (which
determined if a signal was necessary) was hotly disputed.Â  That determination is very relevant on
whether the officer could reasonably believe such a signal was required.Â  In the absence of an Article 38.23
instruction, no mechanism existed for the jury to consider the legality of the
stop of the vehicle and the State was relieved of establishing that the
detention was reasonable.Â  See Oursbourn
v. State, 288 S.W.3d 65, 70 (Tex. App.ÂHouston [1st Dist.] 2009, no pet.)
(finding egregious harm on remand because State was relieved of burden of
establishing voluntariness of statement).Â 
The jury was unaware of the effect of an illegal detention and unaware
that any evidence obtained as a result of an illegal detention could not be considered
for any purpose.[10]Â  We conclude that the omission of the Article
38.23 instruction vitally affected a defensive theory and Â that Robinson suffered egregious harm.

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  For the
reasons stated, we reverse RobinsonÂs conviction and remand for further
proceedings consistent with this opinion.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  November 19, 2010

Date
Decided:Â Â Â Â Â Â Â Â Â Â Â Â  January 13, 2011

Â 

Do Not Publish

Â 











[1]In
his third point of error, Robinson complains that the trial court erred in
failing to issue findings of fact and conclusions of law on his motion to
suppress RobinsonÂs confession.Â  When a
trial court fails to enter findings of fact required by Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005), the
proper procedure Âis for the court of appeals to abate the appeal and order the
trial court to make the findings of fact.ÂÂ 
Berry v. State, 995 S.W.2d
699, 701 (Tex. Crim. App. 1999).Â  This
Court abated the appeal and remanded this case to the trial court to enter
findings of fact and conclusions of law.Â 
Because the record has now been supplemented with findings of fact and
conclusions of law on the motion to suppress, RobinsonÂs third point of error
is overruled as moot.Â  





[2]In the alternative, the State argues Robinson
violated Section 71.030 of the Municipal Ordinances of the City of Mount
Pleasant.Â  Mount Pleasant, Tex., Code of Ordinances Â§ 71.030 (current
through Sept. 21, 2010), available at
http://www.amlegal.com.Â  Section 71.030
provides ÂWhen any other traffic may be affected by such movement, no person
shall turn any vehicle without giving a signal of his or her intention to turn
right or left . . .ÂÂ  Id.Â 
Similar to the Transportation Code, the Municipal Ordinances do not
define the meaning of the word Âturn.ÂÂ  Id.; see
Mount Pleasant, Tex., Code of Ordinances
Â§ 70.01 (current through Sept. 21, 2010), available at http://www.amlegal.com.Â  The State has failed to convince this Court
that the City of Mount Pleasant intended its municipal ordinances to have a
definition of ÂturnÂ different from the Texas Transportation Code.Â  The violation of both ordinances depends on
the meaning of Âturn.ÂÂ  





[3]Similarly,
the Municipal Ordinances of Mount Pleasant do not require an operator
proceeding straight through an intersection to signal.Â  Mount Pleasant, Tex., Code of Ordinances Â§Â§ 70.01, 71.030 (current through Sept. 21,
2010), available at http://www.amlegal.com.Â Â Â Â  





[4]In
reviewing a trial courtÂs decision concerning a motion to suppress, we
generally consider only evidence adduced at the suppression hearing, since the
ruling was based on that evidence, rather than evidence introduced later in the
trial. Â Rachal v. State, 917
S.W.2d 799, 809 (Tex. Crim. App. 1996). Â When the legality of the seizure
is relitigated at trial, however, consideration
of relevant trial testimony is
appropriate in our review.Â  Id. Â In this case, the issue was relitigated at trial and Robinson requested the trial court to reconsider its
prior ruling. Â Therefore, we will
consider the testimony introduced at trial in our analysis.

Â 





[5]During
direct examination, MuÃ±oz refers to a
diagram which shows Eighth Street running parallel to Ninth Street.Â  The State did not tender this diagram for
admission into evidence, and the record on appeal does not contain any diagram
introduced by the State.Â  





[6]MuÃ±ozÂs police vehicle was not equipped with
any recording device.Â  The parties have
not directed this Court to where in the record there is a video or picture of
the intersection.Â  

Â 





[7]The
Texas Court of Criminal Appeals acknowledged, in a discussion of the Âaffirmative linksÂ test, that the term
ÂaffirmativeÂ adds nothing to the plain meaning of Âlink.Â Â When the term ÂlinkÂ is utilized, it is clear
that evidence of drug possession is judged by the same standard as all other
evidence. Â Evans v. State, 202
S.W.3d 158, 162 (Tex. Crim. App. 2006).Â 
We will continue to use the nomenclature of Âaffirmative linksÂ in the
interests of tradition and convenience.





[8]The
car being driven by Robinson was a rental car.Â 






[9]We
note at the suppression hearing, MuÃ±oz
challenged the accuracy of the defense map concerning the intersection of Ninth
Street and Margaret Drive.Â  Because the
exhibit at the suppression hearing was not introduced, the record does not
indicate whether the exhibit referred to in the suppression hearing was the
same as the exhibit introduced at trial.Â 






[10]Evidence
tainted by unlawful police action is traditionally barred as fruit of the
poisonous tree.Â  See Segura v. United States, 468 U.S. 796, 804 (1984); Wong
Sun v. United States, 371
U.S. 471 (1963).Â  Assuming the detention
was illegal, there is a clear causal connection between the detention and the
discovery of the drugs.Â  The State does
not allege that the discovery of the drugs or RobinsonÂs subsequent confession was
sufficiently attenuated from the alleged illegal detention to purge the taint
of the alleged illegal detention.Â  Brown v. Illinois, 422 U.S. 590 (1975); Bell v. State, 724 S.W.2d 780 (Tex.
Crim. App. 1986).Â Â